

**RIVKINRADLER**ᴸᴸᴾ

ATTORNEYS AT LAW

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   DEC 1 4 2007   ★

BROOKLYN OFFICE

BARRY I. LEVY
PARTNER
(516) 357-3149
barry.levy@rivkin.com

**MISC   07 5267**

December 13, 2007

**VITALIANO, J.**

**BY HAND**

Miscellaneous Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   Miller v. National Life Insurance Co.
>        Docket No. 07-CV-364 (PCD) (D. Conn.)
>        Motion to Compel Subpoena Compliance

Dear Miscellaneous Judge:

Defendant National Life Insurance Company ("Defendant" or "National Life") respectfully submits this letter pursuant to Local Civ. Rule 37.3 in support of its request that the Court enforce an October 26, 2007 Subpoena (the "Subpoena," annexed as Exhibit A) issued to Jonathan Schonberg ("Schonberg"), a purported non-party witness to Defendant's alleged age discrimination and retaliation against Plaintiff Charles Miller ("Plaintiff" or "Miller") (pleadings annexed hereto as Exhibit B).[1] The Subpoena seeks "[a]ny and all documents, records, correspondence, electronic mail, affidavits, or declarations to, from, or concerning Charles Miller or National Life Insurance Company that are in your possession, custody, or control." On November 2, 2007, Schwartz & Perry, LLP ("Schwartz & Perry"), the law firm representing Plaintiff in this action, advised Defendant's counsel that it also represents Schonberg -- who apparently is Plaintiff's primary witness (November 2, 2007 Letter annexed as Exhibit C). Then, Schwartz & Perry objected to some parts of the Subpoena on the flimsy rationale that they: (1) purportedly seek information that is "outside the scope of permissible discovery and overly broad and not likely to lead to the discovery of relevant or admissible evidence"; and (2) allegedly call for disclosure of "confidential research, development and commercial information as well as trade secrets."[2] Schwartz & Perry rejected Defendant's good-faith efforts to

---

[1] The underlying matter, Docket No. 07-CV-364 (D. Conn.) (PCD), is pending before Judge Peter C. Dorsey of the District of Connecticut. However, the relevant Subpoena was issued from this Court.

[2] In their November 2, 2007 letter, Schwartz & Perry acknowledged that the Subpoena was "served on Mr. Schonberg." (Exhibit C). Furthermore, Schonberg responded to the Subpoena with some documents on November 9, 2007. These

926 Reckson Plaza
Uniondale, NY
11556-0926
Tel: 516.357.3000
Fax: 516.357.3333

555 Madison Avenue
New York, NY
10022-3338
Tel: 212.455.9555
Fax: 212.687.9044

21 Main Street
Court Plaza South • West Wing
Hackensack, NJ 07601-7021
Tel: 201.287.2460
Fax: 201.489.0495

───── www.rivkinradler.com ─────



secure the requested documents without resort to motion practice, and announced on November 9, 2007 that Schonberg would stand by his objections to the Subpoena (November 9, 2007 Letter annexed as Exhibit D).

It is well-established that the reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1). During v. City Univ. of N.Y., 2006 U.S. Dist. LEXIS 53684 at * 6 (S.D.N.Y. 2006). Evidence is relevant when it tends to make the existence of a fact of consequence to the determination of the action more or less probable than it would be without the evidence. United States v. Stewart, 433 F.3d 273, 312 (2d Cir. 2006). With this in mind, "courts have taken the position that relevance, in the realm of discovery, ought to be broadly and liberally construed." Breon v. Coca-Cola Bottling Co., 232 F.R.D. 49, 52 (D. Conn. 2005). Indeed, "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." Id. (internal quotations and citations omitted) (emphasis in the original). In the instant case, the requested documents are highly relevant to National Life's defenses in this action inasmuch as they will reveal: (1) the extent of any collusion between Schonberg and Miller with respect to the subject matter of this action; (2) the extent of any business or financial dealings between Schonberg and Miller, which in turn could tend to bias or prejudice Schonberg against National Life; (3) the extent to which Miller coached or instructed Schonberg to testify in a given manner; (4) the extent to which Schonberg made statements to Miller that will be at variance with the statements he issues at his deposition or from the witness stand; and (5) the extent to which Schonberg expressed bias or prejudice toward National Life arising from his own employment there.[3] The correspondence between Schonberg and Miller will make the existence of these facts more or less likely than it would be without the evidence, and these facts plainly are "of consequence to the determination of the action," considering that Schonberg is Plaintiff's main – if not only – witness and inexplicably is represented by Miller's attorneys, Schonberg has had substantial business dealings with Miller, and Schonberg and Miller worked together at National Life and both left National Life following negative

documents were covered by another letter from Schwartz & Perry – Schonberg's counsel – which again acknowledged service on Schonberg: "Pursuant to the subpoena dated October 26, 2007 served on Mr. Jonathan Schonberg, enclosed please find responsive documents that are not subject to the objection we raised in our November 2, 2007 letter to you." (Exhibit D). Most recently, Schwartz & Perry submitted still more documents from Schonberg covered by a letter dated November 30, 2007 (annexed as Exhibit E). The letter stated, "Enclosed please find additional documents that are responsive to the subpoena issued to Mr. Schonberg." Accordingly, Schonberg has waived any objections to service. See DG Creditor Corp. v. Dabah, 151 F.3d 75, 81 (2d Cir. 1998) (Rule 45 requires "the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'"); Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co., 240 F.R.D. 44, 47 (D. Conn. 2007) ("[A] party objecting to a subpoena for production and inspection must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena").

[3] Schonberg, like Miller, left National Life after receiving negative performance evaluations.


RIVKINRADLER®
ATTORNEYS AT LAW

Miscellaneous Judge
December 13, 2007
Page 3

performance reviews. Courts in this Circuit require production of documents if they may conceivably prove useful on any ground, such as use as admissions, impeachment, or on cross-examination. Matthies v. Peter F. Connolly Co., 2 F.R.D. 277 (E.D.N.Y. 1941); Coyne v. Houss, 584 F. Supp. 1105, 1107 (E.D.N.Y. 1984); Connecticut Importing Co. v. Continental Distilling Corp., 1 F.R.D. 190, 192 (D. Conn. 1940); Tisby v. Buffalo Gen. Hosp., 157 F.R.D. 157, 170 (W.D.N.Y. 1994). Accordingly, the subpoenaed documents are relevant and the Court should order their full production.

Schonberg's unsubstantiated contention that compliance with the Subpoena would result in the disclosure of "trade secrets" is itself built upon the unconfirmed allegation that Plaintiff and Schonberg currently share a common employer, Water Island Capital LLC ("Water Island") (see Exhibit C). Therefore – according to Schonberg – any correspondence between them would, ipso facto, contain confidential research, development, commercial information, and trade secrets. (Id.). Of course, this position elides the issue of Schonberg's failure to produce relevant correspondence and documents pre-dating Miller's alleged "employment" at Water Island. In any event, the burden is on Schonberg not only to come forward with additional facts demonstrating that the records are indeed of a trade secret nature, but also to show that disclosure would cause him harm. Vogue Instrument Corp. v. Lem Instruments Corp., 41 F.R.D. 346, 349 (S.D.N.Y. 1967). When considering whether the documents Schonberg seeks to conceal actually constitute "confidential" information or "trade secrets," the Court should be guided by the following long-established, oft-stated standards: (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. United States v. International Business Machines Corp., 67 F.R.D. 40, 46 (S.D.N.Y. 1975); see also Moore U.S.A. Inc. v. Standard Register Co., 2000 U.S. Dist. LEXIS 9137 at * 20 (W.D.N.Y. 2000). Accordingly, Schonberg must meet his burden by establishing that the purported "trade secrets" and "confidential" information meet the aforesaid standards. Furthermore, as noted above, even if Schonberg can demonstrate that his correspondence and other documents relating to Miller constitute "confidential" information or "trade secrets," he also will have to show that disclosure will cause him harm. Schonberg cannot rest on a conclusory assertion that he will suffer some non-descript injury – rather, the harm must be "clearly defined and very serious." Uniroyal Chem. Co. v. Syngenta Crop Prot., supra; Reliance Ins. Co. v. Barron's, 428 F. Supp. 200, 202-203 (S.D.N.Y. 1977) (internal quotations and citations omitted); see also Cuno, Inc. v. Pall Corp., 117 F.R.D. 506, 508 (E.D.N.Y. 1987) ("the injury which allegedly will result from disclosure must be shown with specificity, and … conclusory statements to the effect are insufficient.")

To the extent that Schonberg persists in his contention that the requested documents include genuine "trade secrets" or "confidential" commercial information, National Life respectfully requests


ATTORNEYS AT LAW

Miscellaneous Judge
December 13, 2007
Page 4

that this Court conduct an <u>in camera</u> review of the relevant documents, to determine the veracity of Schonberg's claim. To alleviate any undue burden that the <u>in camera</u> review might pose to the Court, Defendant's counsel respectfully requests that it be permitted to conduct the <u>in camera</u> review on behalf of the Court subject to the Court's supervision. <u>See, e.g.</u>, <u>Excellus Health Plan v. Tran</u>, 222 F.R.D. 72, 73 (W.D.N.Y.) (court ordered plaintiff's counsel to conduct court-supervised, <u>in camera</u> review of documents that a non-party witness claimed to contain "trade secrets" and "confidential" information). As the Supreme Court has noted, "orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel … or to the parties" <u>Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340, n. 24 (1979) (internal citations omitted). To the extent that the Subpoena requests any documents that might plausibly be regarded as "confidential" commercial information or "trade secrets" National Life is willing to enter into a confidentiality agreement with Schonberg. If Schonberg's concerns are legitimate, such a confidentiality agreement should obviate his fears.

Accordingly, National Life's motion to enforce the Subpoena should be granted. To the extent that Schonberg continues to assert that the relevant documents are "confidential" or contain "trade secrets," Defendant requests that the documents be submitted for an <u>in camera</u> review to be conducted by Defendant's counsel subject to the Court's supervision. Furthermore, Defendant is prepared to enter into a protective order limiting disclosure of the purportedly confidential information either to counsel, or to counsel and the parties. Finally, Defendant asks this Court to require Schonberg to provide all responsive documents that pre-date Miller's purported employment with Water Island, including personal e-mails and correspondence with Miller, to the extent that they are within his possession, custody, or control. Such materials could hardly constitute "confidential" "trade secrets."

Very truly yours,

RIVKIN RADLER LLP

Barry I. Levy      (BL 2190)

BIL/mg

cc:   Max Gershenoff, Esq.
      Davida S. Perry, Esq. (via FedEx and U.S. Mail)

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Eastern _____ **DISTRICT OF** _____ New York

Charles Miller

**V.**

National Life Insurance Company

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  07-CV-00364 (PCD) (D. Conn.)

TO:
Jonathan Schonberg
Foreside Fund Services, LLC
41 Madison Avenue, Suite 2802, New York, NY 10010

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION     Rivkin Radler LLP, 926 Rexcorp Plaza, Uniondale, NY 11556 | DATE AND TIME     11/29/2007 1:00 pm |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all documents, records, correspondence, electronic mail, affidavits, or declarations to, from, or concerning Charles Miller or National Life Insurance Company that are in your possession, custody, or control.

| PLACE     Rivkin Radler LLP, 926 Rexcorp Plaza, Uniondale, NY 11556 | DATE AND TIME     11/12/2007 1:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    Counsel for Defendant | DATE    10-26-07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Barry I. Levy, Rivkin Radler LLP, 926 RexCorp Plaza, Uniondale, NY 11556, (516) 357-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

NOV. 5.2007   6:40PM   DUE PROCESS ATTY SVC                    NO.752   P.2/2

U.S. DIST. COURT: EASTERN DISTRICT OF NY

COUNTY OF

RIVKIN RADLER (M GERSHENOFF)
926 RECCORP PLAZA
UNIONDALE, NY 11556-0926

Index No.   07CV00346 PCD

CHARLES MILLER

COURT DATE 11/12/07

AFFIDAVIT OF SERVICE

Plaintiff(s)

- against -

NATIONAL LIFE INSURANCE COMPANY

Defendant(s)

SUBPOENA IN A CIVIL CASE

STATE OF NEW YORK: COUNTY OF SUFFOLK ss:

Witness Fee Tendered $40.00

KENNETH DOYLE   BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 10/29/07 at 1325 Hours at FORESIDE FUND SERVICES, LLC 41 MAIDEN LANE, STE 2802 NEW YORK, NY 10010 deponent served the within SUBPOENA IN A CIVIL CASE

JONATHAN SCHONBERG   therein named,   on

**INDIVIDUAL**
A [X]

by delivering a true copy of each to said personally; deponent knew the person so served to be the person described as said person therein. [X] (S) He identified (her) himself as such.

**CORPORATION**
B [ ]

a (domestic) (foreign) corporation by delivering thereat a true copy of each to personally; deponent knew said corporation so served to be the corporation described in legal papers and knew said individual to be   thereof

**SUITABLE AGE PERSON**
C [ ]

by delivering thereat a true copy of each to a person of suitable age and discretion. Said premises is recipient's (actual place of business) (dwelling house) (usual place of abode) within the state. [ ] (S) He identified (her) himself as   of recipient

**AFFIXING TO DOOR, ETC.**
D [ ]

by affixing a true copy of each to the door of said premises, which is recipient's (actual place of business) (dwelling house) (usual place of abode) within the state. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there on the dates below:

\* COMPANY NKA WATER ISLAND CAPITAL

**MAILING USE WITH C or D**
[ ]

Deponent enclosed or caused to be enclosed a copy of same in a postpaid sealed wrapper properly addressed to the above recipient at   and deposited or caused to be deposited said wrapper in (a post office) official depository under exclusive care and custody of the United States Postal Service within New York State.

Deponent further states that he describes the person actually served as follows

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx.) |
|---|---|---|---|---|---|
| MALE | WHITE | BLK | 48 | 6'0 | 180 |

**VOID WITHOUT DESCRIPTION Use with A, B & C**

**MILITARY SERVICE**
E [ ]

Person spoken to was asked whether the recipient(s) was (were) in the military service of the State of New York or the United States and received a negative reply. Upon information and belief based upon the conversation and observation as aforesaid deponent avers that the recipient(s) is (are) not in the military service of the State of New York or the United States as that term is defined in the statutes of the State of New York or the Federal Soldiers and Sailors Civil Relief Act.

That at the time of such service deponent knew the person(s) so served as aforesaid to be the same person(s) mentioned and described as the defendant(s) in this action.

*DUE PROCESS*
ATTORNEY SERVICES

P.O. BOX 847  190 MAIN STREET
@STALMENT, NY 11782
(508) 777-0377   (800) 595-0061
Fax (617) 659-0202

F DRL. Sec. 232

G NYC CIVIL
F or G [ ]

The required notice was legibly printed on the face of the summons.  I identified the defendant by a photograph annex hereto or detailed description that was provided by the plaintiff.
The language required by NYCRR 2900.2(e). (f) & (h) was set forth on the face of said summons(es).

Patrick J. Prendergast
Notary Public, State of New York
No. 5011183
Qualified in Suffolk County
Commission Expires April 12, 2011

Sworn to before me on the
11/02/07

KENNETH DOYLE
LICENSE No.
1006760

Client File # MILLER, CHARLES                              # 55368

RETURN DATE: **March 6, 2007**

------------------------------------------------------X

CHARLES MILLER,              :       CONNECTICUT SUPERIOR COURT

           *Plaintiff,*     :

                      :       JUDICIAL DISTRICT OF FAIRFIELD

*v.*                       :            AT STAMFORD

                      :

NATIONAL LIFE INSURANCE CO.   :

                      :       February 9, 2007

          *Defendant.*   :

------------------------------------------------------X

## COMPLAINT

1.     Charles Miller ("Miller") is a citizen of the United States and a resident of Westport, Connecticut. He was employed by National Life Insurance Company and its subsidiary, Sentinel Funds ("Sentinel"), from April, 1997, until he was unlawfully terminated on November 29, 2005.

2.     National Life Insurance Company ("National Life") is a corporation duly organized and existing under the laws of Vermont that conducts business in the State of Connecticut.

3.     National Life is in the business of selling insurance products to its customers, including throughout the State of Connecticut.

4.     National Life maintained an office in New Caanan and Westport, Connecticut, so that the conduct of National Life is subject to the provisions of Chapter 814c of the Connecticut General Statutes.

5.     Sentinel is a subsidiary of National Life and manages the portfolios of investments that support the life insurance and annuity contracts of National Life, as well as

other institutional and mutual fund accounts which are sold primarily through broker/dealers and financial advisors nationwide.

6.    National Life operates and controls Sentinel, and appoints the Board of Directors and management of Sentinel. The Chairman of the Board of National Life is also the Chairman of the Board of Sentinel. National Life uses Sentinel to perform sales and marketing functions for the products of National Life.

7.    Sentinel's operations are controlled by National Life to such an extent that, in addition, Sentinel has no Human Resources department but instead relies on that of National Life; National Life supervises the management of Sentinel; National Life is closely intermingled with the functions and daily operations of Sentinel; and Sentinel sells the products of National Life as well as some additional financial products.  Finally, National Life controls Sentinel's finances.

8.    In April 1997, Miller commenced his employment with National Life as a wholesaler and continued to work for National Life, without interruption, until he was unlawfully terminated on November 29, 2005.

9.    Miller received his compensation and benefits through National Life and was an employee of National Life when the events complained of herein occurred.

10.    Miller worked for National Life primarily out of his home office located in Westport, Connecticut.

11.    Miller was responsible for a territory that included parts of New York, all of New Jersey and parts of Connecticut.

12.    Miller's region, through his efforts and hard work, was transformed into an extremely lucrative, revenue-generating sales area, which, for all purposes, was considered his

2

territory because he built and maintained relationships with the clients who were brokers and advisors for the products of National Life.

13.     Miller was given a one year contract each year of his employment with National Life, which set forth the compensation Miller was to receive and identified the exclusive territory granted to Miller.

14.     The last signed contract entered into between Miller and National Life was dated January 2005. It continued to provide that Miller's territory consisted of all of New Jersey, and parts of New York and Connecticut.

15.     Throughout his employment with National Life, the most significant portion of Miller's income was received from commissions for the sales he generated, so that the relationships Miller established with his account holders and the nature and extent of his territory were essential to his compensation.

16.     Miller established beneficial relationships with the accounts assigned to him and strengthened his territory throughout his employment with National Life.

17.     Miller was recognized by National Life to have performed his services for National Life satisfactorily from April 1997 and through his more than eight years of employment, as confirmed by, among other things, the repeated renewal of his contracts, his recognition for surpassing sales goals, his finishing first in sales contests and the position he held as Vice President of the North Atlantic Region.

18.     In early 2005, a new manager, Christian Thwaites ("Thwaites"), was appointed by National Life as President and CEO of Sentinel Funds. Thwaites became Miller's, and others', supervisor.

3

19.     Thwaites' appointment by National Life had a drastic and materially negative impact upon the operations of National Life and its selling arm, Sentinel.

20.     At the time of Thwaites' arrival at National Life, in February 2005, Miller was then fifty-nine (59) years of age.  Upon Thwaites' arrival up to and including the date of Miller's termination, Thwaites was Miller's supervisor.

21.     Almost immediately following his appointment, Thwaites made it clear that he valued youth instead of experience, and was needlessly critical of persons over 40, including Miller, despite their demonstrated competence.

22.     After his appointment, Thwaites began to engage in a series of discriminatory acts against Miller and other employees who were older than 40, and who had demonstrated their competence and achievements.

23.     Thwaites' actions created a materially different corporate culture that was hostile to persons over 40 years old.  The new environment created conditions that attempted to rid the company of wholesalers who were perceived to be too old, including Miller, regardless of the quality and nature of the individual employee's actual performance.

24.     In order to force Miller from his position, for example, National Life removed a material portion of Miller's territory on July 1, 2005 and gave it to a significantly younger employee, resulting in a substantial loss of income for Miller.  This action was taken with the full knowledge and approval of National Life's officers, who condoned and ratified the discriminatory conduct.  By reducing Miller's region in such a drastic fashion, National Life knew that Miller's compensation would be significantly reduced since National Life was aware that a great portion of a wholesaler's compensation was commission-based.  National Life made the reduction nevertheless, hoping to force Miller to quit his position.

4

25.     Other National Life wholesalers over age 40 also had their compensation drastically reduced because of the elimination of territories they had serviced for years. These territories were transferred to younger employees, who were generally less qualified.

26.     National Life increased the size of the regions of younger wholesalers. It targeted its older workers with reduction in their territories, and corresponding decreases in compensation.

27.     National Life also attempted to undermine Miller's ability to perform his job successfully by stripping him of a valued internal wholesaler who had been assigned to assist him and assigning this internal wholesaler to another employee, in an attempt to set Miller up to fail by disrupting his activities.

28.     Miller was not only denied the support he had previously received and required, but he also had to share this support staff with another wholesaler, undermining his ability to perform his duties and generate the same measure of revenue he did previously.

29.     By reducing Miller's territory and support staff, National Life intended to and knew it would reduce the revenue Miller could generate, and intended to use this to invent a false performance issue that it could use to discipline Miller.

30.     To further force the older wholesalers to leave, National Life also approved a reduction in the commission schedule that would be paid to wholesalers.

31.     These systematic changes cut Miller's compensation in three significant ways: reduced territory; reduced commission structure; and the elimination of key products. These changes more significantly impacted the older workers who had their income cut, which was not the case with the younger employees who replaced them.

5

32.    National Life, by its conduct, created an inference that its true motivation was to decrease the compensation of older employees to such a significant degree that they would have no choice but to leave their employment, and their territories could then be assigned to younger employees who would then replace them.

33.    The ultimate goal of National Life was to replace its older workers with younger employees based not on their performance, but on National Life's discriminatory desire to create a more youthful image, which National Life felt could be achieved by ridding itself of its older employees and replacing them with younger employees.

34.    The reduction of Miller's territory, therefore, was deliberately done in a calculated effort to make it harder for Miller to succeed at his job, as he had done for so many years, in an attempt to force him to quit or create the pretext that his performance was defective.

35.    Despite these discriminatory practices, Miller continued to perform satisfactorily and was even acknowledged for surpassing an assigned goal in 2005.

36.    Thwaites refused to count certain sales that Miller made in computing Miller's commissions so that Miller's compensation would be even further reduced.

37.    In an effort to further undermine Miller and other older employees, Thwaites set up standards that were unrealistic and unattainable. These "goals" were designed to provide Thwaites and National Life with illegitimate and concocted performance issues in order to terminate Miller.

38.    On October 19, 2005, Miller wrote a letter of complaint to Thomas H. Macleay ("Macleay"), the Chairman of the Board of National Life, and William Decker ("Decker"), the Vice President of Human Resources of National Life, protesting the discriminatory treatment he suffered due to his age.

6

39.     When Miller wrote to the Chairman of the Board of National Life as well as the

Vice President of Human Resources of National Life, Miller was engaged in a protected activity,

of which National Life was aware.

40.     The plaintiff's October 19, 2005 letter to Macleay stated in part:

> It became apparent that the older people were discriminated
> against, and I fell into this category.  We were humiliated,
> embarrassed and stripped of our dignity. Territories were removed
> from external wholesalers for no valid business reason... It was
> 'age' that did us in.  I say this because our territories were being
> transferred to 'younger' people, without our depth of experience,
> or successful track records.... To sum it all up, the new
> management decided to rid the workplace of the older wholesalers,
> not because of inadequate performance, but only because they
> were deemed as too old to do the job.... I urge you to have restored
> the dignity, pride and self-esteem we enjoyed at Sentinel, before
> February of this year, and to put an end to the discrimination and
> retaliation that is pervading our workplace.

41.     Upon information and belief, National Life did no genuine investigation.

42.     The discrimination Miller complained about did not cease after his letter, so on

November 14, 2005, Miller sent a second letter to National Life protesting age discrimination in

his workplace.

43.     The November 14, 2005 letter from Miller to William Decker, the Vice President

of Human Resources for National Life,  stated in part:

> The only thing that has changed is that in my work environment,
> there now exists, within Sentinel, an animus towards people of
> age.  It grows more intense, and has significantly impacted all the
> employees of age in my work environment.  The fact is, all this
> happening to us because of our age... I desire more than anything
> to have my workplace returned to the way it was before February
> 2005.

44.     Upon information and belief, National Life still did no genuine investigation.

7

45.   Despite Miller's repeated complaints, the age discrimination was not put to an end and, in fact a campaign of retaliation ensued against Miller, so that Miller wrote a third letter of complaint to Decker on November 19, 2005.

46.   The November 19, 2005 letter from Miller to Decker stated in part:

> Since I hired an attorney to protect my human rights, I have been constantly harassed, verbally abused, and spoken to and treated in a very demeaning and condescending manner by Christian Thwaites...The fact is, all this is happening to us because of our age... I can tell that these discussions are not really helping me in any way. In fact, they are causing me further grief because each time I register a complaint, Thwaites punishes and retaliates against me by subjecting me to still another irate and abusive phone call.

47.   On November 29, 2005, just 10 days after Miller wrote his third letter to the Vice President of Human Resources of National Life complaining about age discrimination against him, Miller was informed that his employment was being terminated, effective immediately. Once again, no genuine investigation had been conducted.

48.   The pretextual basis used by National Life to terminate Miller was clearly concocted by National Life when it instituted arbitrary and unattainable guidelines so that National Life could contend that Miller did not perform up to these standards.

49.   National Life's reaction to Miller's complaints of age discrimination was not to remove that conduct from Miller's workplace, but rather to retaliate against him in a way that would be reasonably likely to deter a person from engaging in a protected activity.

50.   Miller's performance had never been an issue over the course of his employment with National Life and, in fact, up to the date of Miller's termination, he remained one of the top performing wholesalers.

8

51.     The proximity in time, namely 10 days, between Miller's third written complaint of age discrimination, as well as the two other letters, together establishes a causal connection between Miller's protected activity of complaining and his termination by National Life.

52.     Miller's retaliatory termination because of his repeated complaints of age discrimination constituted adverse employment action.

53.     The alleged reason for Miller's termination, namely his performance, was merely a concocted pretext designed to mask National Life's discriminatory animus against Miller, because of his age, and the fact that Miller was engaged in the protected activity of complaining and attempting to protect himself against age discrimination at the very time he was terminated.

54.     By way of example, National Life engaged in conduct that included the fact that other external wholesalers over the age of 40 also had their regions drastically reduced, while younger wholesalers were permitted to retain their territories intact or had their territories increased; an internal wholesaler was transferred to assist another wholesaler, and Miller was instead required to share an internal wholesaler with another older employee, creating a significant disadvantage for Miller; Miller was terminated a mere ten days after he wrote a third letter of complaint concerning the discrimination, together with other conduct, reasonably creates a strong inference that National Life's true basis for taking these actions and terminating Miller was because of his age and in retaliation for engaging in a protected activity, and not the pretext of performance that was manufactured by National Life to accomplish its goal of ridding its workplace of Miller, because of his age.

55.     As a result of National Life's discriminatory actions and retaliatory termination, some of which are set forth above as examples, Miller has suffered emotional distress, anxiety, and emotional trauma, as well as loss of enjoyment of life's activities.

56.     As a result of the discriminatory and retaliatory conduct of National Life, Miller has suffered and will continue to suffer a reduced lifetime earning capacity, including lost back pay and future pay and benefits.

57.     The irreversible damage inflicted upon Miller as a direct and proximate result of National Life's unlawful discrimination, using his age as a factor that made a difference in his job conditions and termination, also tarnished his reputation in the field that he spent over twenty years building, has caused emotional injuries and has severely diminished the quality of his life.

58.     Here, the acts of National Life were done so clearly with reckless indifference in the face of a perceived risk that its actions would violate Miller's protected rights under the Conn. Gen. Stat. § 46a-60(a)(1), that, in addition to all the damages inflicted upon Miller and in addition to all the measure of relief to which Miller may properly be entitled herein, National Life should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter National Life and others similarly situated from engaging in such conduct in the future.

59.     On April 26, 2006, Miller filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). The CHRO issued a release of jurisdiction on January 4, 2007.

### COUNT ONE: Age Discrimination in Violation of Conn. Gen. Stat. § 46a-60(a)(1)

60.     Paragraphs 1 through 59 are realleged and incorporated by reference herein.

61.     Miller is a protected older individual under the CFEPA, age 59 at the time of his termination and the events leading up to his termination.

62.     Miller was fully qualified for his position; he performed his duties in that position in a satisfactory fashion and was continuing to doing so.

10

63.     Miller's termination on November 29, 2005 constituted an adverse employment action.

64.     Miller was terminated under circumstances giving rise to a strong inference of age discrimination.

65.     National Life subjected Miller to unlawful age discrimination, in violation of Conn. Gen. Stat. § 46a-60(a)(1), causing damages as pled.

### COUNT TWO:  Retaliation in Violation of Conn. Gen. Stat. § 46a-60(a)(4)

66.     Paragraphs 1 through 59 are realleged and incorporated by reference herein.

67.     When Miller complained of age discrimination in letters to National Life, dated October 19, 2005, November 14, 2005, and November 19, 2005, he was engaging in protected activity by opposing a discriminatory employment practice, pursuant to Conn. Gen. Stat. § 46a-60(a)(4).

68.     Miller made his complaints of discrimination to National Life's senior executives, so National Life was aware of Miller's complaints of discrimination.

69.     Miller's termination on November 29, 2005 constituted an adverse employment action.

70.     Miller was terminated on November 29, 2005 as a proximate result of engaging in a protected activity.

71.     The actions of National Life are reasonably likely to deter a person from engaging in protected activity in the future.

72.     National Life subjected Miller to unlawful retaliation, in violation of Conn. Gen. Stat. § 46a-60(a)(4), causing damages as pled.

11

**COUNT THREE: (Willful Discrimination)**

73.     Paragraphs 1-59 are realleged and incorporated by reference herein.

74.     The acts of National Life were committed willfully or with reckless indifference

to Miller's protected rights under the CFEPA, Conn. Gen. Stat. § 46a-60(a)(1).

**WHEREFORE**, the Plaintiff respectfully prays that the Court award him:

1.     Back pay and front pay, plus interest.

2.     Compensatory damages.

2.     Liquidated damages, pursuant to Count Three.

3.     Reasonable costs and attorney fees pursuant to Conn. Gen. Stat. § 46a-104.

4.     Such other relief as the Court may deem just and proper.

THE PLAINTIFF,
CHARLES MILLER

By: _____
      Joseph D. Garrison (Juris No. 21832)
      Alexandra K. Block (Juris No. 424717)
      GARRISON, LEVIN-EPSTEIN, CHIMES
        & RICHARDSON, P.C.
      405 Orange St.
      New Haven, CT 06511
      Tel. 203-777-4425
      Fax 203-776-3965
      jgarrison@garrisonlaw.com
      ablock@garrisonlaw.com

**PLEASE ENTER OUR APPEARANCES ON BEHALF OF THE PLAINTIFF.**

12

ATTEST:
A TRUE COPY
JOSEPH L. ANTINGRELLA
CT. STATE MARSHAL

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------- X

CHARLES MILLER,

                     Plaintiff,          Docket No.:

    -against-                         07-cv-00364-PCD

NATIONAL LIFE INSURANCE COMPANY,

                    Defendant.

--------------------------------------- X

## ANSWER WITH AFFIRMATIVE DEFENSES

Defendant, National Life Insurance Company hereinafter ("National Life"), as and for its Answer to the Complaint of the Plaintiff, Charles Miller (hereinafter "Plaintiff" or "Miller"), hereby responds, as follows:

1.     Denies each and every allegation contained in the paragraph marked and designated 1 of the Complaint, except admits that (i) Miller's compensation and benefits were paid by National Life, and (ii) Miller worked for Sentinel Financial Services Company ("SFSC") from April of 1997 until November 29, 2005.

2.     Admits each and every allegation contained in the paragraph marked and designated 2 of the Complaint.

3.     Denies each and every allegation contained in the paragraph marked and designated 3 of the Complaint, except admits that National Life is in the business of providing insurance products to its customers and that National Life has policyholders in the State of Connecticut.

4.     Denies each and every allegation contained in the paragraph marked and designated 4 of the Complaint.

5.    Denies each and every allegation contained in the paragraph marked and designated 5 of the Complaint.

6.    Denies each and every allegation contained in the paragraph marked and designated 6 of the Complaint, except admits that the Chairman of National Life is also the Chairman of Sentinel Funds.

7.    Denies each and every allegation contained in the paragraph marked and designated 7 of the Complaint.

8.    Denies each and every allegation contained in the paragraph marked and designated 8 of the Complaint, except admits that Miller worked for Sentinel Financial Services Company ("SFSC") from April of 1997 until November 29, 2005.

9.    Admits each and every allegation contained in the paragraph marked and designated 9 of the Complaint.

10.    Denies each and every allegation contained in the paragraph marked and designated 10 of the Complaint.

11.    Denies each and every allegation contained in the paragraph marked and designated 11 of the Complaint.

12.    Denies each and every allegation contained in the paragraph marked and designated 12 of the Complaint.

13.    Denies each and every allegation contained in the paragraph marked and designated 13 of the Complaint.

14.    Denies each and every allegation contained in the paragraph marked and designated 14 of the Complaint.

15.     Denies each and every allegation contained in the paragraph marked and designated 15 of the Complaint.

16.     Denies each and every allegation contained in the paragraph marked and designated 16 of the Complaint.

17.     Denies each and every allegation contained in the paragraph marked and designated 17 of the Complaint, and states that all wholesalers who worked for SFSC are given the title of Vice President.

18.     Denies each and every allegation contained in the paragraph marked and designated 18 of the Complaint, except admits that in February 2005, Christian Thwaites became the President and CEO of Sentinel Companies.

19.     Denies each and every allegation contained in the paragraph marked and designated 19 of the Complaint.

20.     Denies each and every allegation contained in the paragraph marked and designated 20 of the Complaint, except admits that Miller was 59 years of age as of February 2005.

21.     Denies each and every allegation contained in the paragraph marked and designated 21 of the Complaint.

22.     Denies each and every allegation contained in the paragraph marked and designated 22 of the Complaint.

23.     Denies each and every allegation contained in the paragraph marked and designated 23 of the Complaint.

24.     Denies each and every allegation contained in the paragraph marked and designated 24 of the Complaint.

25.     Denies each and every allegation contained in the paragraph marked and designated 25 of the Complaint.

26.     Denies each and every allegation contained in the paragraph marked and designated 26 of the Complaint.

27.     Denies each and every allegation contained in the paragraph marked and designated 27 of the Complaint.

28.     Denies each and every allegation contained in the paragraph marked and designated 28 of the Complaint.

29.     Denies each and every allegation contained in the paragraph marked and designated 29 of the Complaint.

30.     Denies each and every allegation contained in the paragraph marked and designated 30 of the Complaint.

31.     Denies each and every allegation contained in the paragraph marked and designated 31 of the Complaint.

32.     Denies each and every allegation contained in the paragraph marked and designated 32 of the Complaint.

33.     Denies each and every allegation contained in the paragraph marked and designated 33 of the Complaint.

34.     Denies each and every allegation contained in the paragraph marked and designated 34 of the Complaint.

35.    Denies each and every allegation contained in the paragraph marked and designated 35 of the Complaint.

36.    Denies each and every allegation contained in the paragraph marked and designated 36 of the Complaint.

37.    Denies each and every allegation contained in the paragraph marked and designated 37 of the Complaint.

38.    Denies each and every allegation contained in the paragraph marked and designated 38 of the Complaint, except admits that a letter dated October 19, 2005 was sent, but denies the truth of the content or the stated purpose for having sent the letter.

39.    Denies each and every allegation contained in the paragraph marked and designated 39 of the Complaint, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

40.    Admits that the letter described in paragraph 40 of the Complaint was sent, but denies the truth of the content or the stated purpose for having sent the letter.

41.    Denies each and every allegation contained in the paragraph marked and designated 41 of the Complaint.

42.    Denies each and every allegation contained in the paragraph marked and designated 42 of the Complaint, and denies that any act of discrimination was ever committed against Miller by National Life.  National Life admits that the letter described in paragraph 42 was sent, but denies the truth of the content or the stated purpose for having sent the letter.

43.     Admits that the portions of the letter described in paragraph 43 of the Complaint were part of the November 14, 2005 letter that was as sent, but denies the truth of the content or the stated purpose for having sent the letter.

44.     Denies each and every allegation contained in the paragraph marked and designated 44 of the Complaint.

45.     Denies each and every allegation contained in the paragraph marked and designated 45 of the Complaint, except admits that a November 19, 2005 letter was sent, but denies the truth of the content or the stated purpose for having sent the letter.

46.     Admits that the portions of the letter described in paragraph 46 of the Complaint were part of the November 14, 2005 letter that was as sent, but denies the truth of the content or the stated purpose for having sent the letter.

47.     Denies each and every allegation contained in the paragraph marked and designated 47 of the Complaint, except admits that Miller's employment was terminated on November 29, 2005.

48.     Denies each and every allegation contained in the paragraph marked and designated 48 of the Complaint.

49.     Denies each and every allegation contained in the paragraph marked and designated 49 of the Complaint.

50.     Denies each and every allegation contained in the paragraph marked and designated 50 of the Complaint.

51.     Denies each and every allegation contained in the paragraph marked and designated 51 of the Complaint.

52.     Denies each and every allegation contained in the paragraph marked and designated 52 of the Complaint, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

53.     Denies each and every allegation contained in the paragraph marked and designated 53 of the Complaint.

54.     Denies each and every allegation contained in the paragraph marked and designated 54 of the Complaint.

55.     Denies each and every allegation contained in the paragraph marked and designated 55 of the Complaint.

56.     Denies each and every allegation contained in the paragraph marked and designated 56 of the Complaint.

57.     Denies each and every allegation contained in the paragraph marked and designated 57 of the Complaint.

58.     Denies each and every allegation contained in the paragraph marked and designated 58 of the Complaint.

59.     Denies each and every allegation contained in the paragraph marked and designated 59 of the Complaint except admits that the Connecticut Commission on Human Rights and Opportunities ("CHRO") issued a release of jurisdiction on January 4, 2007.

## ANSWERING COUNT ONE

60.     National Life repeats and reiterates its answers to the allegations contained in the paragraphs marked and designated 1 through 59, as reiterated and realleged in the paragraph

marked and designated 60 of the Plaintiff's Complaint with the same force and effect as if set forth in full herein.

61.     Denies each and every allegation contained in the paragraph marked and designated 61 of the Complaint, except admits that Miller was 59 years of age at the time that his employment was terminated, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

62.     Denies each and every allegation contained in the paragraph marked and designated 62 of the Complaint.

63.     Denies each and every allegation contained in the paragraph marked and designated 63 of the Complaint, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

64.     Denies each and every allegation contained in the paragraph marked and designated 64 of the Complaint.

65.     Denies each and every allegation contained in the paragraph marked and designated 65 of the Complaint.

<u>ANSWERING COUNT TWO</u>

66.     National Life repeats and reiterates its answers to the allegations contained in the paragraphs marked and designated 1 through 65, as reiterated and realleged in the paragraph marked and designated 66 of the Plaintiff's Complaint with the same force and effect as if set forth in full herein.

67.    Denies each and every allegation contained in the paragraph marked and designated 67 of the Complaint, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

68.    Denies each and every allegation contained in the paragraph marked and designated 68 of the Complaint.

69.    Denies each and every allegation contained in the paragraph marked and designated 69 of the Complaint, and states that the allegations are statements of law rather than statements of fact, which are respectfully referred to this Honorable Court.

70.    Denies each and every allegation contained in the paragraph marked and designated 70 of the Complaint.

71.    Denies each and every allegation contained in the paragraph marked and designated 71 of the Complaint.

72.    Denies each and every allegation contained in the paragraph marked and designated 72 of the Complaint.

ANSWERING COUNT THREE

73.    National Life repeats and reiterates its answers to the allegations contained in the paragraphs marked and designated 1 through 72, as reiterated and realleged in the paragraph marked and designated 73 of the Plaintiff's Complaint with the same force and effect as if set forth in full herein.

74.    Denies each and every allegation contained in the paragraph marked and designated 74 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

75.     Plaintiff's Complaint fails to state a cause of action against DC 37 upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

76.     Plaintiffs' injuries, if any, were caused in whole or party by the culpable conduct and fault attributable to the Plaintiff and the amount of damages otherwise recoverable by Plaintiff should be extinguished or reduced in the proportion which the culpable conduct attributable to the Plaintiffs bear to the culpable conduct which counsel the damages.

## THIRD AFFIRMATIVE DEFENSE

77.     Plaintiff's employment was terminated in the exercise of proper managerial discretion, in good faith, and for reasons unrelated to either Plaintiff's age or his communications to National Life.  As a result, National Life has not violated any rights that are secured to Plaintiff under the Connecticut Fair Employment Practices Act ("CFEPA").

## FOURTH AFFIRMATIVE DEFENSE

78.     There were legitimate, nondiscriminatory business reasons for all actions taken by National Life with respect to the termination of Plaintiffs' employment.

## FIFTH AFFIRMATIVE DEFENSE

79.     Plaintiff's claims are barred by virtue of the failure to mitigate damages.

10

## SIXTH AFFIRMATIVE DEFENSE

80.     This Court lacks subject matter jurisdiction over incidents of alleged discrimination that occurred more than 180 days before the Plaintiff filed his charge of discrimination with CHRO on May 5, 2006.

## SEVENTH AFFIRMATIVE DEFENSE

81.     As a matter of law, Plaintiff's request for liquidated damages should be stricken as such a request for relief is not within the scope of remedies permitted under CFEPA.

## EIGHTH AFFIRMATIVE DEFENSE

82.     Venue of this action should be transferred to the District of Vermont pursuant to 28 U.S.C. §1404(a) because such a transfer would be in the interests of justice.  All of the alleged events giving rise to the claims against National Life took place in Vermont and most of the witnesses and other evidence relating to Plaintiff's claims are located in Vermont.

WHEREFORE, Defendant, National Life Insurance Company respectfully requests that this Honorable Court enter judgment, as follows:

   (a)     Dismissing this action against National Life, in its entirety, with prejudice;

   (b)     Awarding National Life its costs and disbursements incurred by reason of the defense of this action; and

   (c)     Such other and further relief as the Court deems just and proper.

11

Dated:  April 12, 2007

SHAPIRO, BEILLY, ROSENBERG
ARONOWITZ, LEVY & FOX, LLP

By:  _/S/ Barry I. Levy_____
    Barry I. Levy  (CT 25595)
    Matthew Litt
225 Broadway - 13th Floor
New York, New York  10007
(212) 267-9020
blevy@sbralf.com
mlitt@sbralf.com

-and-

DAY PITNEY, LLP
Victoria Woodin Chavey
Kate H. Bally
CityPlace I - 185 Asylum Street
Hartford, Connecticut  06103
(860) 275-0100
vwchavey@daypitney.com
khbally@daypitney.com

*Counsel for Defendant, National Life Insurance Company*

12

LAW OFFICES

*Schwartz & Perry, LLP*

MURRAY SCHWARTZ
DAVIDA S. PERRY *

BRIAN A. HELLER
MATTHEW T. SCHATZ
YAEL G. UTT

RONALD M. APPEL
OF COUNSEL

*ALSO ADMITTED IN MASSACHUSETTS

*295 Madison Avenue, New York, N.Y. 10017*

(212) 889-6565

FAX (212) 779-8208

www.schwartzandperry.com

E-MAIL info@schwartzandperry.com

November 2, 2007

**Via Fax (516) 357-3333
and Regular Mail**

Rivkin Radler LLP
926 Rex Corp Plaza
Uniondale, New York 11556

**Attn: Max Gershenoff, Esq.**

**Re: Charles Miller v. National Life Insurance Co.**

Dear Max:

This letter is to inform you that our office represents Jonathan Schonberg in connection with the subpoena that was served on him by National Life. You are to have no contact with him except through our office.

The scope of the document request contained in the subpoena served on Mr. Schonberg is outside the scope of permissible discovery and overly broad and not likely to lead to the discovery of relevant or admissible evidence. Mr. Schonberg and Mr. Miller are currently employed by Water Island Capital LLC. As such, any correspondence or email between them in the scope of their employment by Water Island contains confidential research, development and commercial information as well as trade secrets and are irrelevant.

Federal Rule of Civil Procedure 45 indicates that a court may quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development or commercial information" FRCP 45(c)(3)(B)(I). Therefore, we request that the defendant's properly limit the scope of the document request contained in the subpoena to documents that do not, in any way, involve Mr. Schonberg and Mr. Miller's employer, Water Island Capital LLC.

Furthermore, the subpoena served on Mr. Schonberg requires him to be present at a deposition in your offices in Uniondale New York on November 29, 2007. This was improper

*Schwartz & Perry,* LLP

since Mr. Schonberg lives in Delmar, New York which is more than 100 miles from the your office. FRCP 45(c)(3)(B)(iii) provides that if a subpoena "requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena quash or modify the subpoena." Although we are not required to, we would agree to produce Mr. Schonberg at our office on a mutually agreeable date. This should be more than acceptable to you since you advised us you have an office in New York city. We have reached out to Mr. Schonberg to obtain his availability.

We would be pleased to coordinate the depositions of the two doctors that you have subpoenaed on *mutually convenient dates*. We will endeavor to secure the doctors' availability and will contact you as soon as we have done so.

Please advise us at once whether or not you are willing to modify the subpoena as requested so that we may seek the assistance of the court if necessary.

Yours very truly,

MATTHEW T. SCHATZ

LAW OFFICES

*Schwartz & Perry, LLP*

MURRAY SCHWARTZ
DAVIDA S. PERRY *

BRIAN A. HELLER
MATTHEW T. SCHATZ
YAEL G. UTT

RONALD M. APPEL
OF COUNSEL

*ALSO ADMITTED IN MASSACHUSETTS

*295 Madison Avenue, New York, N.Y. 10017*

(212) 889-6565

FAX (212) 779-8208

www.schwartzandperry.com

E-MAIL info@schwartzandperry.com

November 9, 2007

**Via FedEx**

Rivkin Radler LLP
926 Rex Corp Plaza
Uniondale, New York 11556

**Attn: Max Gershenoff, Esq.**

<u>Re: Charles Miller v. National Life Insurance Co.</u>

Dear Max:

Pursuant to the subpoena dated October 26, 2007 served on Mr. Jonathan Schonberg, enclosed please find responsive documents that are not subject to the objection we raised in our November 2, 2007 letter to you.

Also, we have available for copying and inspection at our offices a micro cassette tape containing voice messages left for Mr. Schonberg by Christian Thwaites.

As we previously advised you, Mr. Schonberg objects to certain requests pursuant to FRCP 45(c)(2)(B).  Subject to the properly raised objection, Mr. Schonberg has fully complied with Defendant's document request.

Yours very truly,

MATTHEW T. SCHATZ

cc: Mr. Jonathan Schonberg

LAW OFFICES

*Schwartz & Perry, LLP*

MURRAY SCHWARTZ
DAVIDA S. PERRY*

BRIAN A. HELLER
MATTHEW T. SCHATZ
YAEL G. UTT

RONALD M. APPEL
OF COUNSEL

*ALSO ADMITTED IN MASSACHUSETTS

*295 Madison Avenue, New York, N. Y. 10017*

(212) 889-6565

FAX (212) 779-8208

www.schwartzandperry.com

E-MAIL info@schwartzandperry.com

November 30, 2007

**Via Fax (516) 357-3333**

Rivkin Radler LLP
926 Rex Corp Plaza
Uniondale, New York 11556

**Attn: Max Gershenoff, Esq.**

            <ins>Re: Charles Miller v. National Life Insurance Co.</ins>

Dear Max:

      Enclosed please find additional documents that are responsive to the subpoena issued to Mr. Schonberg.

      Also, as we have repeatedly requested, please provide us with dates you are available to conduct the deposition of Mr. Miller.

                              Yours very truly,

                              MATTHEW T. SCHATZ

CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT      )
                                  ) SS.:
EASTERN DISTRICT                  )

    I, Daniel Devine, being sworn, say:

    I am not a party to the action, am over 18 years of age and reside in Carle Place, New York.

    On December 13, 2007, I sent the within **Letter Requesting Enforcement of an October 26, 2007 Subpoena** and annexed exhibits via first class mail by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

TO:  **Alexandra K. Block**
    Garrison Levin-Epstein Chimes & Richardson
    405 Orange St.
    New Haven, CT 06511
    203-777-4425
    Fax: 203-776-3965
    Email: ablock@garrisonlaw.com
    *ATTORNEY FOR PLAINTIFF*

    **Davida Perry**
    Schwartz & Perry, Esq.-NY
    295 Madison Avenue
    New York, NY 10017
    212-889-6565
    Fax: 212-779-8208
    Email: dperry@schwartzandperry.com
    *ATTORNEY FOR PLAINTIFF*

    **Joseph D. Garrison**
    Garrison Levin-Epstein Chimes & Richardson
    405 Orange St.
    New Haven, CT 06511
    203-777-4425
    Email: jgarrison@garrisonlaw.com
    *ATTORNEY FOR PLAINTIFF*

**Murray Schwartz**
Schwartz & Perry
295 Madison Ave.
New York, NY 10017
212-889-6565
Fax: 212-7798208
Email: info@schwartzandperry.com
*ATTORNEY FOR PLAINTIFF*

**Nina Therese Pirrotti**
Garrison Levin-Epstein Chimes & Richardson
405 Orange St.
New Haven, CT 06511
203-777-4425
Fax: 203-776-3965
Email: npirrotti@garrisonlaw.com
*ATTORNEY FOR PLAINTIFF*

**Douglas W. Bartinik**
Day Pitney LLP-Htfd-CT
242 Trumbull St.
Hartford, CT 06103-1212
860-275-0278
Fax: 860-275-0343
Email: dwbartinik@daypitney.com
*ATTORNEY FOR DEFENDANT*

**Victoria Woodin Chavey**
Day Pitney LLP-Htfd-CT
242 Trumbull St.
Hartford, CT 06103-1212
860-275-0467
Fax: 860-275-0343
Email: vwchavey@daypitney.com
*ATTORNEY FOR DEFENDANT*

_Daniel Devine_
Daniel Devine

Sworn to before me this
13th day of December, 2007

Notary Public

**LIZA GILMARTIN**
**Notary Public, State of New York**
**No. 01GI4906317**
**Qualified in Suffolk County**
**Commission Expires Sept 21, 20**